Steven J. Nataupsky (SBN 155,913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (SBN 156,511)
lynda.zadrasymes@knobbe.com
Matthew S. Bellinger (SBN 222,228)
matt.bellinger@knobbe.com
Forrest M. McClellen (SBN 316,845)
forrest.mcclellen@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>TEESPRING, INC., a Delaware corporation,<br><br>Defendant. | Case No.   5:18-CV-1486<br><br>**COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK AND TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION, COPYRIGHT INFRINGEMENT, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby complains of Teespring, Inc. ("Defendant"), and alleges as follows:

## I. <u>JURISDICTION AND VENUE</u>

1.    This is an action for 1) direct and contributory trademark counterfeiting under 15 U.S.C. § 1114, 2) direct and contributory trademark infringement under 15 U.S.C. § 1114, 3) direct and contributory trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), 4) direct and contributory trademark dilution under 15 U.S.C. § 1125(c), 5) direct, contributory, and vicarious copyright infringement under 17 U.S.C. §§ 501 *et seq.*, 6) unfair competition under California Business & Professions Code § 17200 *et seq.*, and 7) California common law unfair competition.

2.    The Court has original subject matter jurisdiction over the claims that relate to trademark counterfeiting, trademark and trade dress infringement, false designation of origin, and trademark dilution pursuant to 15 U.S.C. §§ 1116 and/or 1121(a) and has original subject matter jurisdiction over the copyright infringement claim under 17 U.S.C. §§ 501 *et seq.* The Court also has original subject matter jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338, as the claims arise under the laws of the United States. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) over the claims which arise under state statutory and common law, because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.    This Court has personal jurisdiction over Defendant because it has a continuous, systematic, and substantial presence within California, including within this Judicial District. Defendant has its principal place of business in California and regularly conducts business within California, including in this

Judicial District.  In addition, Defendant has committed acts of trademark counterfeiting, trademark and trade dress infringement, false designation of origin, trademark dilution, copyright infringement, and unfair competition in California and in this Judicial District, including, but not limited to, counterfeiting, and using infringing marks, trade dress, and designs in connection with the sale and offering for sale of products to customers in California and in this Judicial District, and Defendant's acts form a substantial part of the events or omissions giving rise to Monster's claims.

4.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) at least because a substantial portion of the events complained of herein took place in this Judicial District.

## II. THE PARTIES

5.     Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.     Upon information and belief, Teespring, Inc. is a Delaware corporation, having a principal place of business at 77 Geary St. 5th Floor, San Francisco, CA 94108.

### III.     COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.     Monster and Its Intellectual Property

7.     Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages, including energy drinks.

8.     In 2002, long before Defendant's acts described herein, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous $\text{\reflectbox{M}}$® mark ("Claw Icon"), MONSTER™ mark, MONSTER ENERGY® mark, and/or UNLEASH THE BEAST! ® mark.  Monster's successful line of MONSTER™ drinks has grown to include numerous other well-known products, the containers and packaging of which are prominently marked with the Claw Icon,

1    MONSTER™, MONSTER ENERGY®, and/or UNLEASH THE BEAST!®
2    marks.

3         9.    In addition, since 2002, Monster has consistently used a distinctive
4    trade dress for its packaging and promotional materials, including a stylized font
5    for the mark MONSTER™ on a dark background, a bright contrasting accent
6    color, including bright green, and an overall aggressive, edgy theme, as shown
7    for example below (the "MONSTER Trade Dress"):



10        10.   Since long before Defendant's acts described herein, Monster also
19   has used and continues to use its Claw Icon, MONSTER ENERGY®,
20   MONSTER™, and UNLEASH THE BEAST!® marks, and MONSTER Trade
21   Dress on a wide range of apparel products, such as t-shirts, sweatshirts, hats,
22   headgear, jackets, and pants, and numerous other products such as stickers,
23   sports bags, backpacks, posters, and beverage-ware.   Examples of some
24   authorized apparel items are shown below.

-3-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





11.     Monster is also the owner of numerous trademark registrations for marks that incorporate its famous Claw Icon, MONSTER ENERGY®, and/or MONSTER™ marks, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies | 07/28/2010 | 11/08/2011 |
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 4,011,301 | Sports helmets; video recordings featuring sports, extreme sports, and motor sports | 07/27/2010 | 08/16/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 3,963,669 | All-purpose sport bags; all-purpose carrying bags; backpacks; duffel bags | 07/28/2010 | 05/17/2011 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,332,062 | Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |
|  | 3,963,668 | Stickers; sticker kits comprising stickers and decals; decals; posters | 07/28/2010 | 05/17/2011 |
|  | 4,822,675 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 8/25/2013 | 9/29/2015 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,660,598 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 08/26/2013 | 12/23/2014 |
|  | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 11/16/2004 |
|  | 3,434,821 | Nutritional supplements | 09/07/2007 | 05/27/2008 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,434,822 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/07/2007 | 05/27/2008 |
|  | 4,625,118 | Dairy-based beverages; dairy-based energy shakes; energy shakes; coffee energy shakes; chocolate energy shakes; Ready to drink tea and tea based beverages; ready to drink flavored tea, tea based beverages; ready to drink coffee and coffee based beverages; ready to drink flavored coffee and coffee based beverages; ready to drink chocolate-based beverages | 06/04/2014 | 10/21/2014 |
|  | 4,721,432 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 03/12/2014 | 04/14/2015 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 5,022,676 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 05/28/2014 | 08/16/2016 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |

-9-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,865,702 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 02/02/2015 | 12/08/2015 |
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 04/18/2002 | 02/07/2006 |
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 09/11/2007 | 10/11/2011 |

-11-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 4,721,433 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 03/12/2014 | 04/14/2015 |

12.     Attached hereto as Exhibits A1-A26 are true and correct copies of Monster's trademark registrations identified in Paragraph 11 of this Complaint, which are hereby incorporated by reference.

13.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,908,601; 3,914,828; 3,963,669; 3,908,600; 3,963,668; 2,903,214; 3,434,821; 3,434,822; 3,134,841; 3,044,315; 3,044,314; 3,057,061; 3,134,842; 4,036,680; and 4,036,681 are incontestable.

14.     Collectively, the registrations and trademarks referenced in Paragraph 11 of this Complaint, including all common law rights therein, are referred to as the "MONSTER Marks."

15.     In addition, Monster is the owner of valid copyright registrations for its Claw Icon and can art and packaging designs featuring its Claw Icon, including at least U.S. Copyright Registrations Nos. VA 1-433-242; VA 1-433-

574; VA 1-956-388; VA 1-433-241; VA 1-433-567; VA 1-433-570; VA 1-433-568; VA 1-433-569; and VA 1-433-572.  Collectively, these registrations are referred to as the "Copyrighted Claw Icon Designs."  Attached hereto as Exhibits B1-B9 are true and correct copies of Monster's copyright registrations.

16.    Monster is also the owner of trademark registrations for its UNLEASH THE BEAST!® mark, including U.S. Trademark Registration No. 4,975,822 for "clothing, namely, tops, shirts, long-sleeved shirts, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, socks, sweat bands and gloves; headgear, namely, hats and beanies," which registered on June 14, 2016 and was filed in the United States Patent and Trademark office on March 7, 2014, and U.S. Trademark Registration No. 2,769,364 for "fruit juice drinks, soft drinks, carbonated soft drinks and soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs," which registered on September 30, 2003 and was filed in the United States Patent and Trademark Office on December 18, 2002.  Attached hereto as exhibits C1-C2 are true and correct copies of these trademark registrations, which are hereby incorporated by reference.

17.    Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration No. 2,769,364 is incontestable.

18.    Since 2002, Monster has expanded its use of UNLEASH and BEAST-inclusive marks to include other marks, such as HYDRATE THE BEAST!®, PUMP UP THE BEAST!®, REHAB THE BEAST!®, REHAB THE BEAST! WWW.MONSTERENERGY.COM®, UNLEASH THE NITRO BEAST®, and UNLEASH THE ULTRA BEAST!®.

19.    As a result of Monster's substantial and continuous use of the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark, Monster is the owner of strong common law rights in those marks and trade dress.

20.   Monster has and continues to widely market and promote the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark by displaying the marks and trade dress on billions of cans of its MONSTER™ line of drinks sold in the U.S.  The MONSTER™ line of drinks has achieved substantial commercial success.   Worldwide retail sales now exceed 3 billion cans per year.  The MONSTER™ brand has established itself as the best-selling energy drink brand in the U.S. by unit volume and dollar value.

21.   The MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark are the subject of substantial and continuous marketing and promotion by Monster.  Since 2002, Monster has spent over $4.6 billion dollars in advertising, promoting, and marketing its MONSTER™ brand, including the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark.

22.   Monster's promotional efforts for the MONSTER™ brand and the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark include – by way of example but not limitation – displaying the marks and trade dress on or in connection with promotional and point-of-sale materials, Monster's websites and other Internet websites, Monster's social media accounts, and sponsorship of concert tours, live events, athletes, athletic teams, and athletic competitions.

23.   As a result of Monster's substantial use and promotion of the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark, the marks and trade dress have acquired great value as specific identifiers of Monster's products and serve to identify and distinguish Monster's products from those of others.  Customers in this Judicial District and elsewhere readily recognize the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark as distinctive designations of the origin of Monster's

MONSTER™ brand of beverages, apparel and accessories, and other products and services.   The MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark are intellectual property assets of enormous value as symbols of Monster and its quality products, reputation, and goodwill.

**B.** **Defendant's Infringing Activities**

24.   Without permission or consent from Monster, Defendant has marketed, offered for sale, sold, created, and/or shipped to consumers unauthorized goods bearing counterfeit and infringing marks and designs that are identical to or substantially similar to the MONSTER Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark, and the Copyrighted Claw Icon Designs.

25.   Upon information and belief, Defendant owns and operates an e-commerce system through which infringing and counterfeit apparel and other goods displaying the MONSTER Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark, the Copyrighted Claw Icon Designs, and/or confusingly marks and substantially similar designs (hereinafter, "Infringing Goods") are marketed, offered for sale, sold, created, and/or shipped to consumers by Defendant, all without permission or authorization from Monster.

26.   Upon information and belief, Defendant is directly involved in the sale of goods via its e-commerce system and has direct control over and specific knowledge of the Infringing Goods advertised or sold via that system. Defendant provides all of the necessary tools for users to create online storefronts through which Infringing Goods are then marketed, offered for sale, and sold.   The online storefronts are integrated into Defendant's website, www.teespring.com.  Defendant provides technical, logistical, and other support for those storefronts.  Defendant processes retail transactions for the sale of the goods, creates or directs the creation of the Infringing Goods, and handles shipment of the goods.  In addition, Defendant has supervisory power over users

-15-

1    of its e-commerce system because, for example, Defendant can remove products

2    from its e-commerce system and even suspend or terminate users' storefronts.

3        27.    Defendant has offered for sale, sold, and/or shipped Infringing

4    Goods to customers in California, including to customers in this Judicial

5    District.  Upon information and belief, Defendant also has made or directed the

6    manufacture of those goods in this Judicial District.

7        28.    Defendant has directly profited from the sale through its e-

8    commerce system of Infringing Goods.  Defendant has a direct financial interest

9    in the sale of those goods because Defendant receives a portion of each sale

10   made through its e-commerce system.

11       29.    Some examples of Infringing Goods displaying the MONSTER

12   Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark, and/or

13   Copyrighted Claw Icon Designs offered for sale and sold on Defendant's

14   website are shown below.











30.     Upon information and belief, Defendant has specific knowledge of the Infringing Goods sold through its e-commerce system, including the goods shown in Paragraph 29 of this Complaint, at least because of Defendant's intimate involvement in the marketing, offering for sale, selling, producing, and/or shipping of the goods, and other customer support provided by Defendant relating to the goods.

31.     Defendant is not affiliated with Monster.  At no time has Monster ever given Defendant license, permission, or authority to use or display the MONSTER Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark, or Copyrighted Claw Icon Designs.

32.     Upon information and belief, Defendant knew of the MONSTER Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark, and Copyrighted Claw Icon Designs and Monster's rights therein when Defendant

1    began marketing, offering for sale, selling, creating, and/or distributing
2    Infringing Goods.

3           33.    Monster repeatedly notified Defendant of its infringement of the
4    MONSTER Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark,
5    and Copyrighted Claw Icon Designs, including in correspondence dated March
6    27, 2018, April 9, 2018, April 20, 2018, and May 8, 2018, and demanded that
7    Defendant stop its unlawful activities.  However, Defendant thereafter continued
8    to market, offer for sale, sell, create, and/or distribute Infringing Goods in
9    blatant and willful disregard of Monster's valuable intellectual property rights.

10          34.    Defendant's acts complained of herein have been willful and
11   deliberate.  Defendant has intentionally attempted to capitalize on Monster's
12   valuable reputation and customer goodwill in the MONSTER Marks,
13   MONSTER Trade Dress, and UNLEASH THE BEAST!® mark by using marks
14   and trade dresses that are the same as or confusingly similar to Monster's
15   MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!®
16   mark on or in connection with Infringing Goods.  Defendant's actions alleged
17   herein are intended to cause confusion, mistake, or deception as to the source of
18   the products offered and sold through Defendant's e-commerce system and are
19   intended to cause consumers and potential customers to believe that the products
20   are associated with Monster, when they are not.

21          35.    Consistent with Defendant's blatant disregard of and efforts to
22   illicitly profit from Monster's intellectual property, Defendant has a long history
23   of infringing the intellectual property rights of others for its own profit and gain.
24   Defendant is well aware of the rampant acts of infringement and counterfeiting
25   that are perpetrated by and through Defendant's e-commerce system, as
26   evidenced by the fact that Defendant has been the subject of multiple trademark
27   and copyright infringement lawsuits, including at least the following:

28

-21-

- *Ohio State Univ. v. Teespring, Inc.*, No. 14-cv-00397 (S.D. Ohio 2014);

- *Lopez v. Teespring, Inc.*, No. 15-cv-03885 (S.D. Ohio 2015);

- *Teespring, Inc. v. Puetz*, No. 15-cv-04149 (N.D. Cal. 2015);

- *Puetz v. Teespring.com, Inc., et al.*, No. 17-cv-02519 (D. Nev. 2017);

- *Life is Good Company v. Teespring, Inc.*, No. 17-cv-11420 (D. Mass 2017);

- *LTTB LLC v. Teespring, Inc.*, No. 17-cv-07334 (N.D. Cal. 2017);

- *Stay Frosty Enterprises LLC v. Teespring, Inc., et al.*, No. 18-cv-00283 (D. Or. 2018).

36.    By virtue of the acts complained of herein, Defendant has created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and the Infringing Goods sold through Defendant's e-commerce system, and has otherwise competed unfairly with Monster by unlawfully trading on and using the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark without Monster's permission or consent.

37.    Defendant's acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendant is enjoined from its wrongful acts and infringement.

38.    Defendant's acts complained of herein have caused Monster to suffer irreparable injury to its business.  Monster will suffer substantial loss of goodwill and reputation unless and until Defendant is preliminarily and permanently enjoined from the wrongful acts complained of herein.

## IV.   <u>FIRST CLAIM FOR RELIEF</u>

### (Trademark Counterfeiting Under 15 U.S.C. § 1114)

39.    Monster incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-38 of this Complaint as if set forth fully herein.

40.    This is a claim for trademark counterfeiting arising under 15 U.S.C. § 1114.

41.    Defendant has intentionally used in commerce, without permission from Monster, marks that are identical to or substantially indistinguishable from Monster's registered MONSTER Marks and UNLEASH THE BEAST!® mark, including at least the marks that are the subject of Monster's U.S. Trademark Registration Nos. 3,908,601, 4,051,650, and 4,975,822 in connection with marketing, selling, offering for sale, manufacturing, and/or distributing Infringing Goods.  Such use is likely to cause confusion, or to cause mistake, or to deceive.

42.    Monster is informed and believes, and on that basis alleges, that Defendant has used the non-genuine marks in connection with its business knowing that the marks are counterfeit.  Monster is informed and believes, and on that basis alleges, that the activities of Defendant complained of herein constitute willful and intentional trademark counterfeiting, and Defendant acted with an intent to unfairly compete against Monster, to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that the Infringing Goods are associated with, sponsored by, or approved by Monster, when, in fact, they are not.

43.    Defendant is also contributorily liable for the counterfeiting acts of the users of Defendant's e-commerce system.

/ / /

44.     Defendant provides its e-commerce system to users knowing or having reason to know that the system is used to market, offer for sale, sell, create, and/or distribute goods displaying marks that are counterfeits of Monster's federally registered MONSTER Marks and UNLEASH THE BEAST!® mark, including at least the marks that are the subject of Monster's U.S. Trademark Registration Nos. 3,908,601, 4,051,650, and 4,975,822.

45.     Upon information and belief, Defendant has direct control over and monitors the e-commerce system it provides to users, and knowingly and materially assists users with marketing, offering for sale, selling, creating, and/or distributing goods that display marks that are counterfeits of Monster's federally registered MONSTER Marks and UNLEASH THE BEAST!® mark, including at least the marks that are the subject of Monster's U.S. Trademark Registration Nos. 3,908,601, 4,051,650, and 4,975,822.  In addition, Defendant has supervisory power over users of its e-commerce system because, for example, Defendant can remove products from its e-commerce system and even suspend or terminate users' storefronts.

46.     Monster is informed and believes, and on that basis alleges, that Defendant had actual knowledge of Monster's ownership and prior use of the registered marks and without the consent of Monster, has willfully and intentionally violated 15 U.S.C. § 1114.  Monster is further informed and believes, and on that basis alleges, that this is an exceptional case within the meaning of 15 U.S.C. § 1117.

47.     Defendant, by its actions, has irreparably injured Monster and damaged Monster in an amount to be determined at trial.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

/ / /

# V. <u>SECOND CLAIM FOR RELIEF</u>

## (Trademark Infringement Under 15 U.S.C. § 1114)

48.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-47 of this Complaint as though fully set forth herein.

49.     This is a claim for direct and contributory trademark infringement arising under 15 U.S.C. § 1114.

50.     Monster owns valid and enforceable federally registered trademarks for the MONSTER Marks and UNLEASH THE BEAST!® mark, including the registrations listed in Paragraphs 11 and 16 of this Complaint.

51.     Defendant has directly infringed the federally registered MONSTER Marks and UNLEASH THE BEAST!® mark by using in commerce, without permission from Monster, colorable imitations, and/or confusingly similar marks to the MONSTER Marks and UNLEASH THE BEAST!® mark.

52.     Defendant has used the aforementioned marks in connection with marketing, selling, offering for sale, manufacturing, and/or distributing Infringing Goods.  Such use is likely to cause confusion or mistake, or to deceive.

53.     Defendant is also contributorily liable for the infringing acts of the users of Defendant's e-commerce system.

54.     Defendant provides its e-commerce system to users knowing or having reason to know that the system is used to market, offer for sale, sell, create, and/or distribute Infringing Goods.

55.     Upon information and belief, Defendant has direct control over and monitors the e-commerce system it provides to users, and knowingly and materially assists users with marketing, offering for sale, selling, creating, and/or distributing Infringing Goods.  In addition, Defendant has supervisory power over users of its e-commerce system because, for example, Defendant

can remove products from its e-commerce system and even suspend or terminate users' storefronts.

56.     Upon information and belief, the activities of Defendant complained of herein constitute willful and intentional infringements of Monster's registered marks, and Defendant acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that the Infringing Goods are associated with, sponsored by, originated from, or are approved by, Monster, when they are not.

57.     Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and UNLEASH THE BEAST!® mark, and willfully violated 15 U.S.C. § 1114.

58.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

59.     Defendant, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VI.   THIRD CLAIM FOR RELIEF

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

60.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-59 of this Complaint as though fully set forth herein.

61.     This is an action for direct and contributory trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

62.     As a result of the widespread use and promotion of Monster's MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!®

mark, the marks and trade dress have acquired strong secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark with Monster.

63.     Defendant has directly infringed the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark and created a false designation of origin, by using in commerce, without Monster's permission, trademarks and trade dress that are identical and/or confusingly similar to Monster's MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark in connection with marketing, offering for sale, selling, creating, and/or distributing Infringing Goods.

64.     Defendant is also contributorily liable for the infringing acts of the users of Defendant's e-commerce system.

65.     Defendant provides its e-commerce system to users knowing or having reason to know that the system is used to market, offer for sale, sell, create, and/or distribute Infringing Goods.

66.     Upon information and belief, Defendant has direct control over and monitors the e-commerce system it provides to users, and knowingly and materially assists users with marketing, offering for sale, selling, creating, and/or distributing Infringing Goods.  In addition, Defendant has supervisory power over users of its e-commerce system because, for example, Defendant can remove products from its e-commerce system and even suspend or terminate users' storefronts.

67.     Defendant's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster with Defendant, and/or as to the origin, sponsorship, or approval of Defendant's goods or Defendant's commercial activities, in violation of 15 U.S.C. § 1125(a).
/ / /

-27-

68.    Upon information and belief, the activities of Defendant complained of herein constitute willful and intentional infringements of the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark and Defendant acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that the Infringing Goods are associated with, sponsored by or approved by Monster, when they are not.

69.    Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark, and without the consent of Monster, willfully violated 15 U.S.C. § 1125(a).

70.    Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

71.    Defendant, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VII.   <u>FOURTH CLAIM FOR RELIEF</u>

### (Federal Dilution Under 15 U.S.C. § 1125(c))

72.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-71 of this Complaint as though fully set forth herein.

73.    This is a claim for direct and contributory federal trademark dilution arising under 15 U.S.C. § 1125(c).

74.    Products sold under Monster's Claw Icon have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.  By virtue of the wide renown acquired by Monster's Claw Icon, coupled with the widespread distribution and extensive

sale of various products distributed under the Claw Icon, the Claw Icon is famous and became so prior to Defendant's acts complained of herein.

75.     Defendant's unauthorized and commercial use of Monster's Claw Icon in connection with marketing, offering for sale, selling, creating, and/or distributing Infringing Goods has caused and is likely to continue to cause dilution of the distinctive qualities of Monster's famous Claw Icon.

76.     Defendant is also contributorily liable for the acts of trademark dilution by users of Defendant's e-commerce system.

77.     Defendant provides its e-commerce system to users knowing or having reason to know that the system is used to market, offer for sale, sell, create, and/or distribute goods displaying marks that dilute or are likely to dilute the distinctive qualities of Monster's famous Claw Icon.

78.     Upon information and belief, Defendant has direct control over and monitors the e-commerce system it provides to users, and knowingly and materially assists users with marketing, offering for sale, selling, creating, and/or distributing goods that display marks that dilute or are likely to dilute the distinctive qualities of Monster's famous Claw Icon.  In addition, Defendant has supervisory power over users of its e-commerce system because, for example, Defendant can remove products from its e-commerce system and even suspend or terminate users' storefronts.

79.     Defendant's acts are likely to tarnish, injure, or trade upon Monster's business, reputation or goodwill, and to deprive Monster of the ability to control the use of its Claw Icon and the quality of products associated therewith.

80.     Upon information and belief, Defendant's acts of dilution have been willful and deliberate.

81.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

82.    Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VIII.  <u>FIFTH CLAIM FOR RELIEF</u>

### (Copyright Infringement Under 17 U.S.C. §§ 501 *et seq.*)

83.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-82 of this Complaint as though fully set forth herein.

84.    This is an action for direct, contributory, and vicarious copyright infringement under the Copyright Act, 17 U.S.C. §§ 501, *et seq*.

85.    Monster is the owner of valid and enforceable copyrights in the Claw Icon, can art, and packaging, which contain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq*.

86.    Monster has complied with the registration requirements of 17 U.S.C. § 411(a) for the Copyrighted Claw Icon Designs, and has obtained Copyright Registration Nos. VA 1-433-242; VA 1-433-574; VA 1-956-388; VA 1-433-241; VA 1-433-567; VA 1-433-570; VA 1-433-568; VA 1-433-569; and VA 1-433-572.

87.    Defendant has unlawfully copied protected elements of Monster's Copyrighted Claw Icon Designs.

88.    Upon information and belief, Defendant had access to Monster's Copyrighted Claw Icon Designs at least because Monster displays its Copyrighted Claw Icon Designs on its licensed clothing, beverage packaging, its widespread promotional materials, and its publicly-available website. Defendant also had access to Monster's Copyrighted Claw Icon Designs because Monster previously notified Defendant of its infringement of those copyrighted designs.

/ / /

89.   Without permission from Monster, Defendant has directly infringed Monster's Copyrighted Claw Icon Designs by distributing, displaying, and reproducing identical and substantially similar designs bearing protected elements of Monster's Copyrighted Claw Icon Designs.

90.   Defendant is also contributorily and vicariously liable for the acts of copyright infringement by users of Defendant's e-commerce system.

91.   Defendant provides its e-commerce system to users knowing or having reason to know that the system is used to market, offer for sale, sell, create, and/or distribute goods that infringe Monster's Copyrighted Claw Icon Designs.

92.   Upon information and belief, Defendant has direct control over and monitors the e-commerce system it provides to users, and knowingly and substantially assists users with marketing, offering for sale, selling, creating, and/or distributing goods that infringe Monster's Copyrighted Claw Icon Designs.

93.   Upon information and belief, Defendant has the right and ability to supervise its users' conduct on Defendant's e-commerce system, including, for example, because it can remove products from its e-commerce system and even suspend or terminate users' storefronts.

94.   Defendant also profits directly from the sale of goods through its e-commerce system that infringe Monster's Copyrighted Claw Icon Designs because Defendant receives a portion of each sale.

95.   Defendant's deliberate copying of Monster's Copyrighted Claw Icon Designs infringes and continues to infringe Monster's Copyrighted Claw Icon Designs in violation of 17 U.S.C. § 501(a).   Defendant is directly infringing on Monster's exclusive right to reproduce copies, make derivative works, distribute copies, and display its Copyrighted Claw Icon Designs under 17 U.S.C. §§ 106(1)–(3), (5).

96.    Upon information and belief, Defendant's infringement has been willful and deliberate.

97.    Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

98.    Defendant, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## IX.    SIXTH CLAIM FOR RELIEF

## (Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)

99.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-98 of this Complaint as though fully set forth herein.

100.    This is an action for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

101.    By virtue of the acts complained of herein, Defendant has intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed with Monster in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

102.    Defendant's acts complained of herein constitute trademark infringement, trade dress infringement, and unfair competition which have injured and damaged Monster.

103.    Defendant, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

///

///

# X. <u>SEVENTH CLAIM FOR RELIEF</u>

## (California Common Law Unfair Competition)

104.   Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-103 of this Complaint as though fully set forth herein.

105.   This is an action for unfair competition under the common law of the State of California.

106.   Defendant's acts complained of herein constitute trademark infringement, trade dress infringement, and unfair competition under the common law of the State of California.

107.   By virtue of the acts complained of herein, Defendant has willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

108.   Defendant's aforementioned acts have damaged Monster in an amount to be determined at trial.

109.   Defendant has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

110.   Defendant's willful acts of unfair competition under California common law constitute fraud, oppression and malice.  Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

# XI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Monster prays for judgment against Defendant as follows:

1.   That the Court render a final judgment in favor of Monster and against Defendant on all claims for relief alleged herein;

/ / /

-33-

2.     That the Court render a final judgment that Defendant has violated the provisions of 15 U.S.C. § 1114 by directly and/or contributorily counterfeiting Monster's registered trademarks, including at least the marks that are the subject of U.S. Trademark Registration Nos. 3,908,601, 4,051,650, and 4,975,822;

3.     That the Court render a final judgment that Defendant has violated the provisions of 15 U.S.C. § 1114 by directly and/or contributorily infringing Monster's registered trademarks, including at least the marks that are identified in Paragraphs 11 and 16 of this Complaint;

4.     That the Court render a final judgment that Defendant has violated the provisions of 15 U.S.C. § 1125(a) by willfully and directly and/or contributorily infringing the MONSTER Marks, MONSTER Trade Dress, and UNLEASH THE BEAST!® mark by using a false designation of origin, false description or false representation through the marketing, offering for sale, and sale of Infringing Goods offered through Defendant's e-commerce system;

5.     That the Court render a final judgment that Defendant has violated the provisions of 15 U.S.C. § 1125(c) by directly and/or contributorily diluting Monster's famous Claw Icon;

6.     That the Court render a final judgment that Defendant has violated 17 U.S.C. § 501(a) by directly, contributorily, and/or vicariously infringing Monster's Copyrighted Claw Icon Designs;

7.     That the Court render a final judgment that Defendant has violated the provisions of California Business & Professions Code §§ 17200, *et seq.* by committing trademark infringement, trade dress infringement, and unfairly competing with Monster;

8.     That the Court render a final judgment that Defendant has violated California common law by unfairly competing with Monster;

/ / /

-34-

9.     That Defendant, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with Defendant who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

a.     using any of the MONSTER Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark, and/or Copyrighted Claw Icon Designs in connection with Defendant's products or other products offered for sale or sold through Defendant's e-commerce system, using any of the MONSTER Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark, and/or Copyrighted Claw Icon Designs in advertising or promoting Defendant's products or other products offered through Defendant's e-commerce system, and/or using confusingly similar variations of any of the MONSTER Marks, MONSTER Trade Dress, or UNLEASH THE BEAST!® mark in any manner that is likely to create the impression that Defendant's products or other products offered through Defendant's e-commerce system originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

b.     manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products bearing any of the MONSTER Marks, MONSTER Trade Dress, or UNLEASH THE BEAST!® mark and/or any confusingly similar marks or trade dress;

c.     manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products bearing or using Monster's Copyrighted Claw Icon Designs or any designs substantially similar thereto;

d.      without permission or authorization from Monster, copying, reproducing, distributing, displaying, creating derivative works of Monster's Copyrighted Claw Icon Designs and/or importing, manufacturing, or producing any products bearing copies or derivative works of Monster's Copyrighted Claw Icon Designs;

e.      filing any applications for registration of any trademarks, trade dress, copyrighted works, or designs confusingly similar to the MONSTER Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark and/or substantially similar to the Copyrighted Claw Icon Designs;

f.      otherwise infringing any of the MONSTER Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark, or Copyrighted Claw Icon Designs, or otherwise diluting the Claw Icon or any of Monster's other trademarks;

g.      falsely designating the origin of Defendant's products in any manner suggesting that Defendant's products or other products offered for sale or sold through Defendant's e-commerce system originate from Monster;

h.      unfairly competing with Monster in any manner whatsoever; and

i.      causing a likelihood of confusion or injury to Monster's business reputation;

10.    That Defendant be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. § 1116;

11.    That Defendant be required to account to Monster for any and all profits derived by Defendant and all damages sustained by Monster by virtue of Defendant's acts complained of herein;

12. That Defendant be ordered to pay over to Monster all damages which Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

13. That, at Monster's election, Defendant be ordered to pay over to Monster statutory damages under 15 U.S.C. § 1117(c) of up to $2,000,000 for each of Monster's marks that Defendant has counterfeited;

14. That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

15. That Monster be awarded its damages and Defendant's profits under 17 U.S.C. § 504, as well as enhanced damages pursuant to 17 U.S.C. § 504. Alternatively, if Monster elects, that Monster be awarded statutory damages pursuant to 17 U.S.C. § 504;

16. That Monster be awarded exemplary damages from Defendant pursuant to Cal. Civ. Code. § 3294;

17. That Defendant's actions be deemed willful;

18. That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster pursuant to at least 15 U.S.C. § 1117 and 17 U.S.C § 505;

19. That Defendant be required to deliver and destroy all devices, literature, advertising, goods and other unauthorized materials bearing any of the MONSTER Marks, MONSTER Trade Dress, UNLEASH THE BEAST!® mark, and/or  Copyrighted Claw Icon Designs pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503; and

/ / /

/ / /

/ / /

/ / /

/ / /

-37-

20.    That Monster be awarded such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  July 13, 2018          By: */s/ Matthew S. Bellinger*
                                Steven J. Nataupsky
                                Lynda J. Zadra-Symes
                                Matthew S. Bellinger
                                Forrest M. McClellen

                                Attorneys for Plaintiff,
                                MONSTER ENERGY COMPANY

-38-

## XII.  DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Monster hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  July 13, 2018          By: */s/ Matthew S. Bellinger*
                               Steven J. Nataupsky
                               Lynda J. Zadra-Symes
                               Matthew S. Bellinger
                               Forrest M. McClellen

                               Attorneys for Plaintiff,
                               MONSTER ENERGY COMPANY

28613843

-39-